**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| TYRONE DIGGS, | * |
| Plaintiff, | * |
| v. | * Civ. No.: MJM-23-3537 |
| SERGEANT DUPREE, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Self-represented plaintiff Tyrone Diggs, formerly an incarcerated individual, filed this civil action on December 28, 2023, alleging constitutional violations based on the excessive use of force and denial of adequate medical care while in custody. ECF No. 1. On February 22, 2024, defendants Sergeant Dupree and Baltimore County Department of Corrections (together, the "County Defendants") filed a Motion to Dismiss. ECF No. 6. On May 16, 2024, defendant Zoey Barnes filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 14.[1] Diggs filed a response in opposition to County Defendants' Motion to Dismiss. ECF No. 10. However, despite being notified of his opportunity to also respond to Barnes' Motion, ECF No. 15, Diggs has not filed a response. No hearing is required to resolve the matters pending before the Court. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, County Defendants' motion is granted as to Baltimore County Department of Corrections and denied as to Sergeant Dupree. Barnes' motion, construed as a motion to dismiss, is granted.

---

[1] Barnes also filed a Motion to Seal (ECF No. 13), which is granted.

**I.     BACKGROUND**

Plaintiff Tyrone Diggs filed this lawsuit while incarcerated at the Baltimore County Detention Center ("BCDC"). *See* ECF No. 1.  He alleges that on July 9, 2023, correctional officer Sgt. Dupree advised him that he was to be transferred from general population to restrictive housing following an incident involving Sgt. Nance. *Id*. at 2.  Diggs asked to speak with a lieutenant, but Dupree ignored the request and called for additional officers.  As the other officers arrived, Diggs again asked to speak with a lieutenant, and he was again denied. *Id*. Diggs alleges that he was not "unruly, combative or aggressive" and at times put his hands up "in a surrendering motion." *Id*.  Nevertheless, Officers Cruz and Carby "gain[ed] control" of Diggs. *Id* at 2.  While Diggs was under the control of Cruz and Carby, and not resisting, Dupree approached Diggs from behind and sprayed "an excessive amount of Oleoresin Capsicum 'O.C' spray to the entire back left side of [Digg's] head and partial left side of [Digg's] facial area." *Id.* at 2–3. Cruz and Carby then slammed Diggs onto the concrete floor and another officer forcefully placed his knee into Diggs's lower back. *Id.* Throughout the entire encounter, Diggs was "not resisting, being combative nor display[ing] any signs of aggression." *Id.*

Diggs was escorted to the medical department. ECF No. 1 at 3. Because he is asthmatic and was exposed to the OC spray, he suffered shortness of breath. *Id*.  He also had blurred vision. *Id.* He could not continue to walk to the medical department, and Officers Herzog and Cruz dragged him to the elevator. *Id*. Diggs regained his strength and was able to walk from the elevator to the medical department. *Id.*

Once in the medical department he was evaluated by Nurse Bryant and Physician's Assistant Azubuike. ECF No. 1 at 3. Azubuike wiped Digg's face, took his vital signs, and cleared him to return to his cell. *Id*.  Diggs advised medical staff that he was having difficulty breathing

2

and had extreme lower back pain but was simply directed to submit a sick call. *Id*. Bryant told Diggs he would need to deal with the remaining OC spray when he reached his restrictive housing cell. *Id*. at 4.

Diggs was then escorted to the restrictive housing unit and assigned to a cell. ECF No. 1 at 4. Although Diggs requested hygiene items to clean the OC from his body and hair, as well as a change of clothes, he was left in his cell for two days without those items. *Id*. On the second day, Diggs was provided hygiene items, a change of clothes, and a mattress. *Id*. at 4.

As a result of the altercation, Diggs was found guilty after a disciplinary hearing and sentenced to a 20-day period of restrictive housing. ECF No. 1 at 4.

While housed in restrictive housing, Diggs submitted a number of sick call requests complaining of severe low back pains, blurred vision, and constant headaches, but he was not seen by any medical staff. *Id.* He also submitted sick call slips asking to see a psychiatrist because he experienced anxiety and depression as a result of the altercation; however, he was also not seen by the psychiatrist. *Id.* at 4-5.

After Diggs was removed from restrictive housing, he submitted additional sick call slips but was only seen on one occasion, on October 29, 2023, and was provided Motrin for five days. ECF No. 1 at 5. He also submitted another request to see the psychiatrist, due to his difficulty sleeping, but he was not seen by the psychiatrist. *Id*. at 5.

Diggs filed an administrative complaint regarding the incident on August 29, 2023. ECF No. 1 at 5. He also requested that the matter be referred to the "Internal Affairs Unit" ("IAU") for investigation.  On August 31, 2023, Diggs was interviewed by IAU. *Id.* He did not, however, receive a response to his administrative complaint. *Id.*

3

## II.     STANDARD OF REVIEW

County Defendants assert that the Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 6. Barnes asserts that the Complaint should be dismissed pursuant to Rule 12(b)(6) or, in the alternative, that summary judgment should be granted pursuant to Rule 56. ECF No. 14.

A defendant may challenge a federal district court's subject matter jurisdiction of a case by filing a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The plaintiff bears the burden of proving that the court indeed has jurisdiction over the matter. *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015) (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)).

Pursuant to Rule 12(b)(6), a defendant may file a motion to dismiss a complaint for failure to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Upon review of a motion to dismiss a complaint pursuant to Rule 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997.To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)).

### III.    ANALYSIS

A plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also Filarsky v. Delia*, 566 U.S. 377 (2012). Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)).

Section 1983 also requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Thus, the doctrine of respondeat superior liability does not apply in § 1983 cases. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Indeed, "'[i]n a § 1983 suit . . . each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'" *Younger v. Crowder*, 79 F.4th 373, 381 n.12 (4th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 677) . If a plaintiff has not alleged any personal connection between a defendant and a denial of constitutional rights, the claim against that defendant must fail. *Vinnedge*, 550 F.2d at 928; *see also Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (same).

### A. Zoey Barnes

Diggs does not allege any facts suggesting that defendant Zoey Barnes was personally involved in or otherwise aware of the decisions regarding the provision of medical care to him. Other than naming Barnes in the caption of the Complaint, Diggs does not allege any facts against her. As such, Barnes' Motion to Dismiss will be granted, and any claims against her dismissed.[2]

### B. Baltimore County Department of Corrections

County Defendants argue that Baltimore County Department of Corrections, as a county agency, is non sui juris—meaning, it is not an entity subject to suit and cannot be sued

independently from Baltimore County.  ECF No. 6-1 at 3-4.  In his response memorandum, Diggs agrees that Baltimore County Department of Corrections is not amenable to suit and states that he "withdraw[s] his complaint against" it. ECF No. 10 at 3. Diggs does not allege any wrongdoing by Baltimore County.  Accordingly, the suit shall be dismissed as to Baltimore County Department of Corrections.  *See Borkowski v. Balt. Cty.*, 414 F. Supp. 3d 788, 804 (D. Md. 2019) (dismissing the Baltimore County Police Department as a defendant because it is not sui juris and is merely an agency of Baltimore County) (citing *James v. Frederick Cty. Pub. Schs.*, 441 F.Supp.2d 755, 758 (D. Md. 2006) (internal citations omitted)).

### C. Sergeant Dupree

At the time of the events in question, it appears that Diggs was a pretrial detainee at BCDC.[3] Accordingly, his claims are analyzed under the Fourteenth Amendment of the U.S. Constitution. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001).

Liberally construed, Diggs asserts that Dupree used excessive force against him, in violation of the Fourteenth Amendment.  To prevail, Diggs must show that "the use of force is deliberate—*i.e.*, purposeful or knowing"—and "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015); *see also Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016). Objective reasonableness "turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The court must "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id.* at 397.

---

[3] In his response to County Defendants' Motion to Dismiss, Diggs states he was a pretrial detainee. ECF No. 10 at 2.

Whether force used by detention facility officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). The court must consider the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by the officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force, however. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation. But if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

Diggs asserts that while under the "full control" of other officers and "not resisting," Dupree "sprayed an excessive amount" of a chemical agent in his face. ECF No. 1 at 2. Diggs maintains that throughout this altercation he "was not resisting, being combative, nor display[ing] any signs of aggression." *Id*. at 3. As a correctional officer, Dupree was acting under color of state law during the alleged incident. *Id*. at 1–3. Liberally construing Diggs's pleadings and drawing reasonable inferences in his favor, as the Court must, Dupree's alleged use of the chemical spray was not a "good-faith effort to maintain or restore discipline," *Hudson*, 503 U.S. at 6–7. As such, Diggs has stated a plausible excessive force claim against Dupree. Furthermore, because Diggs's claim arises under the Fourteenth Amendment and § 1983, the Court has federal question jurisdiction over the claim. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Accordingly, County Defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) is denied as to Dupree.[4]

## IV.     CONCLUSION

For the reasons stated herein, County Defendants' Motion to Dismiss is GRANTED as to the Baltimore County Department of Corrections and DENIED as to Sergeant Dupree.  Defendant Zoey Barnes's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment, construed as a Motion to Dismiss, is GRANTED.  The Complaint will be dismissed without prejudice as to the Baltimore County Department of Corrections and Zoey Barnes.  Barnes's Motion to Seal is GRANTED.  Diggs may file a motion for the appointment of counsel within twenty-eight (28) days.

A separate Order follows.

_7/16/24_  
Date

Matthew J. Maddox  
United States District Judge

---

[4] County Defendants also assert the defense of qualified immunity, ECF No. 6-1 at 4–5, but offer no substantive analysis of this issue. "Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. PAE Gov't Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)) (cleaned up). Qualified immunity is an affirmative defense. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006). The plaintiff bears the burden of proof on the first question—*i.e.*, whether a constitutional violation occurred . . . . [and] [t]he defendant bears the burden of proof on the second question—*i.e.*, entitlement to qualified immunity." *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007) (internal citations omitted). Diggs alleges that Dupree used excessive force when he sprayed him with a chemical agent while he was restrained and compliant with officers' instructions. County Defendants fail to show that the unlawfulness of Dupree's conduct, as alleged, was not clearly established at the time of the incident.